UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5-5-17

YOUNGJA HUH and MIN HUH, on behalf of
themselves and all others similarly situated,

                     Plaintiffs,

          -v-

SUEZ WATER WESTCHESTER INC., SUEZ WATER
RESOURCES INC., and JOHN DOES 1–20,

                     Defendants.

------------------------------------------------------------X

16 Civ. 3240 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

The claims by plaintiffs Youngja Huh and Min Huh (the "Huhs") in this putative class action flow from a single water-use bill they were issued in May 2014 by defendants Suez Water Westchester, Inc. and Suez Water Resources, Inc. (together, "Suez Water"). The Huhs claim that the $548.83 bill, covering a three-month period, was based on an incorrect tabulation of their water use. The Huhs complained to Suez Water's customer service department, but, they allege, were told that Suez Water does not provide billing adjustments as a matter of company policy. The Huhs then filed a complaint with Suez Water's regulator, the New York Public Service Commission ("NYPSC"), which provides for abatements of water bills in certain cases where the customer's water meter is found inaccurate. But, before the Huhs' NYPSC complaint could be resolved, they abandoned it in favor of this lawsuit, in which they bring contract and tort claims and a claim under New York General Business Law § 349 for deceptive business practices. The Huhs invoke federal jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). They seek actual and punitive damages, disgorgement of profits, and attorneys' fees.

Suez Water now moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Under Rule 12(b)(1), Suez Water argues that the Huhs lack standing, thus depriving the Court of subject matter jurisdiction. And under Rule 12(b)(6), Suez Water argues that the Huhs' claims are barred by the doctrine of primary jurisdiction; that their claims are barred by the filed rate doctrine; and that the operative complaint otherwise fails to state claims for which relief may be granted.

For the following reasons, the Court dismisses this action based on the doctrine of primary jurisdiction, without prejudice to the Huhs' ability to pursue such claims in court after first exhausting their remedies before the NYPSC.

## I. Background[1]

### A. Factual Background[2]

#### 1. The Huhs' February–May 2014 Water Bill

Suez Water supplies water to the Huhs' house in Ardsley, New York. SAC ¶ 47. In May 2014, Suez Water sent a water bill to the Huhs indicating that the Huhs had used 7,600 cubic feet of water during the three-month period between February 14 and May 14, 2014, yielding, at the

---

[1] The following summary of the Huhs' factual allegations is drawn from the Second Amended Complaint ("SAC"), Dkt. 28. In resolving defendants' motion to dismiss, the Court assumes all well-pleaded facts to be true and draws all reasonable inferences in favor of the plaintiffs. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). The Court also considered the materials attached to the Declaration of Stephanie R. Feingold in Support of Defendants' Motion to Dismiss, Dkt. 34 ("Feingold Decl."), largely bearing on primary jurisdiction, because each is either incorporated by reference or is "integral" to the SAC, *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002), a "document that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit," *Rothman v. Gregor*, 220 F.3d 81, 88–89 (2d Cir. 2000) (citation omitted), or a matter of public record, *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998).

[2] The SAC contains allegations describing conduct by defendants or their predecessors towards other customers. Because these allegations are not germane to the present motion to dismiss, they are not summarized here. *See* SAC ¶¶ 5–36.

2

applicable rates, a bill of $548.83. *Id.* ¶ 48. The Huhs dispute that they used 7,600 cubic feet of water during that period. They allege that during the same period in 2013, their water use, according to their water bill, had been only roughly 1,500 cubic feet of water. *Id.* ¶¶ 2, 49–50. The Huhs further claim that "during much of the billing period" at issue in 2014, they were away from their home and that no person lived there. *Id.* ¶ 51. They also allege that a plumber determined that the service plumbing and fixtures belonging to the Huhs were not leaking water during the billing period. *Id.* ¶ 52. In sum, the Huhs claim their water bill for the 2014 period "was inaccurate as to how much water plaintiffs had actually used during the billing period." *Id.* ¶ 53.

After receiving the bill, on June 3, 2014, the Huhs claim they contacted Suez Water's customer service department, which the Huhs claim Suez Water holds out to "redress[] consumer complaints and billing issues," *id.* ¶ 1, to ask "why their bill was so unusually high." *Id.* ¶ 54. On that occasion and several others, the Huhs spoke with representatives of that department. Each told the Huhs that, as a matter of company policy, Suez Water does not grant adjustments or abatements for water bills. *Id.* ¶¶ 55–58. The Huhs allege that Suez Water representatives also told them that if they did not pay the bill in full, then they would face penalties. *Id.* ¶¶ 59–60. Based on Suez's Water's statements, the Huhs allege, they paid their water bill. *Id.*

### 2. The Huhs' Challenge Before the NYPSC

Suez Water, as a public water utility operating in New York, is regulated by the NYPSC. As such, at all relevant times, Suez Water operated pursuant to an operative tariff approved by the NYPSC.[3] *See* Feingold Decl., Exs. D–E. The tariff set out the rates that Suez Water was

---

[3] During the events at issue, Suez Water was known as United Water New Rochelle ("UWNR"), and the water bill issued to the Huhs was in that name. On November 14, 2014, UWNR merged

permitted to charge per unit of water use during the events at issue, as the tariff currently in place also does. *See id.*, Ex. E. The Huhs do not dispute that the rates on which their water bill was based were in accord with the operative tariff.

The operative tariff also set out the following policy on abatements and refunds:

**22.** **Abatements and Refunds**
(a) There shall be no abatement of the minimum water rates in whole or in part, by reason of the extended absence of the Customer, unless service has been discontinued at his request, and no abatement shall be made for leaks or for water wasted by improper or damaged service pipes or fixtures belonging to the Customer.
(b) If upon test of a meter upon complaint, it be found that the accuracy of the meter (determined as provided for in the rules and regulations of the Public Service Commission) exceeds the limits as set forth by the Commission, the bills of the Customer shall be adjusted to the extent of such excess for one-half of the quantity registered since the last test unless it can be shown that the error is due to an accident or other cause, the approximate date of which can be determined, in which case it shall be figured back to such date; or unless the Customer has suffered no damage from said error by virtue of the fact that the meter has registered a quantity of water less than that allowed for the minimum rate of the applicable rate schedule.

*Id.*, Ex. D at Leaf No. 41. The tariff thus provided a mechanism for relief for a Suez Water customer to obtain a refund or abatement, where testing reveals that the accuracy of a water meter did not meet the tariff's standards. *See id.*; *see also id.*, Ex. E at Leaf No. 46.

Although the Huhs' SAC does not disclose this, the Huhs initially filed a "high bill" complaint with the NYPSC challenging as excessive the $548.83 they paid. *See id.*, Ex. A. On October 1, 2014, the NYPSC notified the Huhs that their "request for an informal hearing . . . has been granted. Our file shows your complaint concerns: **high bill**. Only this issue will be decided." *Id.* (emphasis in original). On May 2, 2016, however, the Huhs filed the initial

---

with United Water Westchester, Inc., and began operating under the latter's name; on November 9, 2015, United Water Westchester, Inc. became Suez Water. *See* SAC ¶ 47 n.12.

complaint in this case, Dkt. 1, and, on June 28, 2016, before a NYPSC hearing was held, Youngja Huh administratively closed the Huhs' NYSPC complaint. *See* Feingold Decl., Ex. B.[4] As a result, the NYPSC has not had occasion to assess the Huhs' challenge to the water bill in question.

### B. This Lawsuit

On May 2, 2016, the Huhs filed their initial complaint, naming as defendants United Water Corporation and GDF Suez Energy North America, Inc. Dkt. 1. On August 17, 2016, after the instant defendants notified the Court that they are the proper defendants, the Court held a conference and invited plaintiffs to file an Amended Complaint ("AC"). Dkt. 11. On August 24, 2016, the Huhs did so. Their AC named as defendants the two instant defendants and also Suez Environment North American Holdings, Inc. Dkt. 12.[5] On September 30, 2016, following an initial motion to dismiss, Dkts. 18–20, the Huhs filed the SAC, the operative complaint here. Dkt. 28.

The SAC claims that the $548.83 bill that Suez Water sent to the Huhs in May 2014 was too high, because it was based on the premise that the Huhs had used approximately 7,600 cubic feet of water during the three-month billing period. In fact, the SAC alleges, the Huhs used far less water during that period. The SAC alleges that, in prior billing periods, the Huhs had used approximately 1,500 cubic feet of water; that the Huhs' home was unoccupied during much of the billing period; and that the Huhs' plumber has ruled out water leaks from service pipes and fixtures as a cause of high water use. SAC ¶¶ 49–52. Thus, the SAC alleges, "the [water] bill

---

[4] The record does not reflect whether the Huhs pursued such a hearing after receiving this notice or why a hearing had not been held as of June 28, 2016.

[5] The later SAC dropped Suez Environment North American Holdings, Inc. as a defendant and added John Does 1–20 as defendants.

was inaccurate as to how much water Plaintiffs had actually used during the billing period." *Id.* ¶ 53. The SAC separately faults Suez Water's customer service department for inaccurately stating, when contacted by the Huhs, that Suez Water "never grant[s] adjustments or abatements on water bills, as a company policy." *Id.* ¶ 55; *see also id.* ¶¶ 56–60. In fact, as noted, the regulatory tariff provides customers with an avenue to obtain such relief.

Based on these allegations, the SAC brings claims for breach of contract, *id.* ¶¶ 81–82; unjust enrichment, *id.* ¶¶ 83–86; negligence, *id.* ¶¶ 87–90; and fraud, *id.* ¶¶ 91–92; and alleges violations of New York General Business Law § 349, which outlaws deceptive business practices, *id.* ¶¶ 75–80. The Huhs seek to represent a class of more than 1,000 similarly situated persons, *id.* ¶ 67, and assert a total amount in controversy exceeding $5 million, *id.* ¶ 43.[6]

On October 21, 2016, defendants filed a motion to dismiss the SAC, Dkt. 33, and, in support, filed a memorandum of law, Dkt. 35, and the Feingold Declaration, Dkt. 34, which addresses the Huhs' intervening complaint before the NYPSC and various NYPSC regulations. On November 10, 2016, plaintiffs filed a memorandum of law in opposition, Dkt. 38; on November 18, 2016, defendants filed a reply, Dkt. 40. On January 26, 2017, the parties moved to stay discovery pending resolution of the motion to dismiss, Dkt. 42, which, on January 27, 2017, the Court granted, Dkt. 43.

**II. Discussion**

Suez Water contends, first, under Rule 12(b)(1), that the Court lacks subject matter jurisdiction, because the Huhs fail to plead an injury in fact and therefore do not have standing to sue. That argument lacks merit. Although the Huhs articulate other grievances—including

---

[6] CAFA's requirement of minimal diversity is met because the Huhs allege they are New York citizens and that one defendant, Suez Water Resources, Inc., is a Delaware and New Jersey citizen for diversity purposes. *Id.* ¶¶ 37–42.

6

challenging as misleading the alleged statements by Suez Water representatives to the effect that the company would never adjust a deficient water bill—the Huhs also claim monetary injury. They claim that the May 2014 bill for $548.83 was based on an excessive tabulation of their water use. SAC ¶ 53. As relief, they seek monetary damages. *Id.* ¶ 92(b). Pecuniary injuries such as those claimed by the Huhs are classic injuries in fact and are clearly cognizable. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *see also Hein v. Freedom From Religion Foundation, Inc.*, 551 U.S. 587, 621 (2007) (Scalia, J., concurring in judgment) (describing "wallet injury" as an injury in fact).

Suez Water makes several arguments for dismissal under Rule 12(b)(6), including based on the doctrine of primary jurisdiction, based on the filed rate doctrine, and for failure to state a claim. At this time, the Court need only reach the first of these arguments.

"The doctrine of primary jurisdiction is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. The doctrine's central aim is to allocate initial decisionmaking responsibility between courts and agencies and to ensure that they do not work at cross-purposes." *Ellis v. Tribune Television Co.*, 443 F.3d 71, 81 (2d Cir. 2006) (quotations omitted). Courts invoke the primary jurisdiction doctrine "whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Id.* (quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956)). The doctrine applies to claims better suited to determination by state administrative agencies as well as federal administrative agencies, as either a "federal or state agency may have the requisite competence. . . ." *See Johnson v. Nyack Hosp.*, 964 F.2d 116, 122–23 (2d Cir. 1992) ("*Johnson I*").

"Under the doctrine, a court defers to the agency for advisory findings and either stays the pending action or dismisses it without prejudice," mindful of the concern that the effect of such action "not work a time-bar to claims that will in all likelihood be refiled in federal court after the agency acts." *Johnson v. Nyack Hosp.*, 86 F.3d 8, 11 (2d Cir. 1996) ("*Johnson II*"). Application of the doctrine does not constitute a determination that the court is dispossessed of subject matter jurisdiction over the dispute, for the relevant claim must be "originally cognizable in the courts." *Id.* (quoting *W. Pac. R.R. Co.*, 352 U.S. at 63–64). The doctrine is justified by the interests in maintaining uniform regulation in an area entrusted to an administrative agency and in utilizing administrative expertise in so regulating. *See Ellis*, 443 F.3d at 82.

Application of the primary jurisdiction doctrine is not governed by a rigid formula. It is instead applied on a case-by-case basis. Courts generally look to four factors in determining whether to invoke the doctrine: "(1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rules; and (4) whether a prior application to the agency has been made." *Id.* at 82–83.

Here, viewed in combination, these factors strongly support application of the primary jurisdiction doctrine.

First, the factual determinations on which the Huhs' claim of an overcharge for water use will turn are familiar to the NYPSC and implicate its technical expertise. In alleging that they were charged for water they did not use, the Huhs complain that their water meter was malfunctioning during the relevant time period in 2014. The entity resolving the Huhs' challenge to their quarterly water bill of necessity needs to determine whether the Huhs' water

meter was functioning properly and within regulatory limits. As the NYSPC tariff reflects, such determinations are ones commonly addressed by the NYPSC. A federal court, in contrast, has no expertise in such matters. *See Johnson I*, 964 F.2d at 122–23 (affirming dismissal under primary jurisdiction doctrine of plaintiff doctor's claims based on hospital's revocation of his surgical privileges; court leaves it, in the first instance, to the New York Public Health Council, the state agency responsible for determining whether there is a medical justification for withdrawing a physician's privilege to practice medicine, to assess whether revocation was supported by a proper medical justification); *see also Tassy v. Brunswick Hosp. Center, Inc.*, 296 F.3d 65, 69–71 (2d Cir. 2002) (primary jurisdiction doctrine not applicable when plaintiff doctor's hospital privileges were revoked based on allegations of sexual harassment, not medical or technical incompetence; "[t]he primary factual issue is whether [plaintiff] committed the alleged sexual harassment, the resolution of which does not require the [New York Public Health Council's] expertise"). Indeed, the Huhs themselves originally pursued this remedy before the NYPSC and were granted an informal hearing by the NYPSC on their complaint of a "high bill," although, for unknown reasons, they abandoned it.

Second, the question at issue implicates matters of agency discretion. The NYPSC has approved the operative tariff. It, in turn, sets the standards for water meter functionality and the parameters under which abatements are to be awarded. Insofar as the Huhs seek recompense based on an allegedly defective water meter, their SAC implicates those policy determinations.

Third, were the Court to resolve the Huhs' claim without an initial assessment by the NYSPC, there would be some possibility of inconsistent rulings or of a misapplication of the governing regulatory standards. The Huhs' claim of a material water meter malfunction ought to be evaluated under the same standards, including as to the extent to which incidental water meter

errors are tolerated, as claims by other customers who pursue remedies before the NYPSC. The Court will benefit from the NYPSC's assessment of the Huhs' claim of an errant water meter reading.

Finally, the Huhs made a prior application before the NYPSC; they withdrew their "high bill" complaint before any hearing was held. *See* Feingold Decl., Exs. A–B. That, too, favors application of the primary jurisdiction doctrine. *See Ellis*, 443 F.3d at 89 ("If prior application to the agency is present, this factor provides support for the conclusion that the doctrine of primary jurisdiction is appropriate.") The Huhs' initial pursuit of the NYPSC remedy reinforces that the NYPSC is best equipped, in the first instance, to address the Huhs' claims. If the Huhs are entitled to relief from Suez Water within the coverage of the tariff, the NYPSC will assure that it is provided.

These factors, viewed together, thus strongly favor recourse to the NYPSC, and indicate that the justifications underlying the primary jurisdiction doctrine are abundant in this case. The Huhs' claim falls well within the NYPSC's wheelhouse. And applying the primary jurisdiction doctrine will mitigate the risk that the Court would otherwise wade into an area characterized by technical or administrative expertise. *See id.* at 91 ("District courts should continue to apply [the] four-factor test because each case turns on 'whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation.'" (quoting *W. Pac. R.R. Co.*, 352 U.S. at 64)).

Pursuant to the primary jurisdiction doctrine, the Court therefore dismisses this case to enable the Huhs first to pursue their claims before the NYPSC. This dismissal is, of course, without prejudice to the Huhs' right later to pursue claims in this Court to the extent their grievances are not remedied before the NYPSC.

The Court, accordingly, does not reach Suez Water's other arguments for dismissal.

## CONCLUSION

For the reasons stated above, the Court grants Suez Water's motion to dismiss the SAC, without prejudice to the Huhs' right to pursue claims in this Court after exhausting their remedies before the NYPSC.

The Clerk of Court is respectfully directed to terminate the motions pending at Dkts. 18 and 33, and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: May 5, 2017
      New York, New York